**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Kenny MSIAKII, Defendant–Appellant.**

**No. 13–20373**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 17, 2014.

Ellen R. Meltzer, Esq., Special Counsel, U.S. Department of Justice, Washington, DC, Renata Ann Gowie, Assistant U.S. Attorney, U.S. Attorney's Office, Houston, TX, for Plaintiff–Appellee.

Carmen Roe, Esq., Houston, TX, for Defendant–Appellant.

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM: *

An eight-count indictment charged Kenny Msiakii with health care fraud in violation of 18 U.S.C. § 1347 and aiding and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

abetting in violation of 18 U.S.C. § 2. Following a guilty verdict at trial on all counts, the district court imposed a sentence that included $2.5 million in restitution. Msiakii challenges the amount of the restitution award, arguing that it should have been limited to the amount of actual losses that were both alleged in the indictment and proved at trial. Additionally, Msiakii contends that the district court erroneously included losses that occurred outside of the temporal scope of the indictment. He asserts that the temporal scope should be limited to the specific instances of fraud alleged in counts one through eight of the indictment, which occurred between May and October 2008; he thus argues that the actual loss was $36,397.01. Alternatively, he suggests that the court could also include the $467,000 in losses related to the patients associated with Dr. Stephen Brown because those losses were part of the scheme proved at trial.

The Mandatory Victim Restitution Act requires a sentencing court to order restitution for a victim's "actual loss directly and proximately caused by the defendant's offense[s] of conviction." *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir.), *cert. denied*, —— U.S. ——, 134 S.Ct. 78, 187 L.Ed.2d 30 (2012); 18 U.S.C. § 3663A(a). Where a fraudulent scheme is an element of the offenses, "the court may award restitution for actions pursuant to that scheme." *United States v. Wright*, 496 F.3d 371, 381 (5th Cir.2007) (internal quotation marks and citation omitted). However, "restitution cannot be awarded for 'losses' attributable to conduct outside the temporal scope of the scheme charged; the same is true for conduct not charged as part of the scheme." *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir.2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 1524, 188 L.Ed.2d 457 (2014). In other words, "[a]n award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea, or for losses caused by conduct that falls outside the temporal scope of the acts of conviction." *Sharma*, 703 F.3d at 323 (internal footnote omitted). The Government bears the burden of proving the loss amount sustained by the victim by a preponderance of the evidence. *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir.1998); 18 U.S.C. § 3664(e). However, the defendant must prove the amount of any offset. *Sheinbaum*, 136 F.3d at 449.

This court typically reviews "the quantum of an award of restitution for abuse of discretion." *Sharma*, 703 F.3d at 322. A district court abuses its discretion when its ruling is "based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Crawley*, 533 F.3d 349, 358 (5th Cir.2008) (internal quotation marks and citation omitted). "[E]xcessive restitution awards cannot be excused by harmless error; every dollar must be supported by record evidence." *Sharma*, 703 F.3d at 323.

Msiakii asserts that he preserved his objection to the restitution award because he "urg[ed] the court to use the $467,000 for calculation of damages and loss." He made that objection in the context of determining the guidelines range under U.S.S.G. § 2B1.1(b)(1). However, the district court used its finding of an actual loss of $2.5 million to support both the enhancement under § 2B1.1(b)(1)(J) and the restitution award. To avoid review for plain error, "[a] party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review." *United States v. Mondragon–Santiago*, 564 F.3d at 361 (internal quotation marks and citations omitted). Because "[t]he standard for 'relevant conduct' under the Guidelines is more lax than

that for determining what conduct can be the basis of restitution, ... the two arguments are distinct and the district court never had the opportunity to address the restitution argument." *Wright,* 496 F.3d at 381. Nevertheless, as in *Wright,* the defendant's "arguments are essentially the same," and Msiakii arguably preserved the objection to the amount of restitution. *See id.* We need not decide the issue, however, because Msiakii fails to show any error by the district court. *See id.*

Because proof of a fraudulent scheme was required under § 1347(a), the district court properly included any losses established by a preponderance of the evidence that were directly and proximately caused by the scheme alleged in the indictment and that occurred within the timeframe alleged in the indictment. *See Wright,* 496 F.3d at 380–82; *Sheinbaum,* 136 F.3d at 449. The indictment in this case alleged that, as the manner and means of executing the fraudulent scheme, Msiakii submitted nearly $6.7 million in claims to Medicare for durable medical equipment (DME) that was not medically necessary and that, in some cases, was never provided. The indictment specifically alleged that Msiakii ran the scheme from approximately November 2007 until September 2009. Consistent with these allegations and the guilty verdict on all charges, the district court properly calculated the amount of restitution based upon evidence at trial, testimony at sentencing, and unrebutted information in the presentence report that, between 2007 and 2009, Medicare paid more than $2.5 million to reimburse fraudulent claims for DME submitted at Msiakii's behest. *See Wright,* 496 F.3d at 380–82; *Sharma,* 703 F.3d at 323.

Msiakii offers no authority suggesting that the specific instances of fraud alleged in counts one through eight, which occurred in 2008, somehow restrict the temporal scope of the indictment. He relies on *De Leon,* 728 F.3d at 507–08, in which we vacated a restitution award because it included losses that occurred during the years before and after the "June or July 2008 through April 2010" timeframe alleged in the indictment. Msiakii makes no argument that any of the losses included in the restitution amount occurred outside of the November 2007 to September 2009 timeframe alleged in his indictment. He also relies on *United States v. Adams,* 363 F.3d 363, 367 (5th Cir.2004), in which we contrasted the "the scope of a fraud conviction based on a jury verdict"—which "is best deciphered, as a practical matter, from the counts of conviction,"—with the scope of a fraud conviction based upon a guilty plea, which the parties themselves define. In *Adams,* the plea agreement limited the temporal scope of the fraudulent conduct alleged in the indictment. *Id.* It is distinguishable as there is no plea agreement here.

Msiakii has shown no error, plain or otherwise, in the district court's determination of the restitution amount. The judgment is AFFIRMED.